UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of DMS DRYWALL & INTERIOR SYSTEMS, INC., Plaintiff, v. S.J. AMOROSO CONSTRUCTION CO., LLC, et al., Defendants. | Case No. 2:25-cv-00780-CSK<br><br>ORDER RE: DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH ADR PROVISION AND FOR STAY OF PROCEEDINGS<br><br>(ECF No. 9) |

Pending before the Court is Defendants S.J. Amoroso Construction Co., LLC, Federal Insurance Company, and Liberty Mutual Insurance Company's motion to compel Plaintiff DMS Drywall & Interior Systems, Inc. to binding judicial reference pursuant to California Code of Civil Procedure section 638, and in the alternative, to compel Plaintiff to binding arbitration, and to stay this action pending the conclusion of either alternative dispute resolution procedure.[1] (ECF No. 9.) A hearing was held on December 16, 2025. Attorney Brian Junginger appeared as counsel for Plaintiff; and

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 16, 17, 18.)

attorney Alan Rosin appeared as counsel for Defendants. (ECF No. 21.)

For the reasons that follow, the Court GRANTS Defendants' motion to compel judicial reference.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff DMS Drywall & Interior Systems, Inc. is a California corporation with its principal place of business in Bakersfield, California. Compl. ¶ 4 (ECF No. 1). The United States of America is named as a nominal plaintiff pursuant to 40 U.S.C. § 3133(b)(3)(A). *Id.* ¶ 9.

On August 29, 2019, Defendant S.J. Amoroso Construction Co., LLC ("Amoroso") entered into a prime contract with the Department of Veteran Affairs, USACE Sacramento District (the "Project Owner") for the construction of the Veteran's Administration Community Based Outreach Clinic and Central Utility Plan in Stockton, California (the "Project"). *Id.* ¶¶ 1, 10. As required by the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, Defendant Amoroso procured a payment bond issued by Defendants Liberty Mutual Insurance Company and Federal Insurance Company ("Surety Defendants") to ensure that subcontractors and suppliers working on the Project for Defendant Amoroso would be paid. *Id.* ¶ 11.

Plaintiff entered into a Subcontract Agreement with Defendant Amoroso to perform various work for the Property, including metal stud framing, gypsum board assemblies, shaft wall assemblies, and other work under the scope of the Subcontract, for $7,841,344. *Id.* ¶ 12. Plaintiff alleges that despite "substantial delays and disruptions caused by others," Plaintiff completed its work under the Subcontract, incurring additional costs to do so. *Id.* ¶¶ 13-14. According to Plaintiff, Defendant Amoroso has either failed to share additional compensation it received from the Project Owner for the delays on the Project or failed to make claims against the Project Owner for additional compensation on Plaintiff's behalf. *Id.* ¶ 15. Plaintiff alleges Defendant Amoroso has refused to pay Plaintiff the remaining amount due to Plaintiff for its work on the Project,

totaling $3,688,063.87. *Id.* ¶ 16.

**B. The Subcontract's ADR Provision**

Section G of the Subcontract comprises the terms for alternative dispute resolution (the "ADR Provision"). Declaration of Robert Erskine, Exh. A at § G (ECF No. 12-1). The ADR Provision states, in relevant part:

> **G. CLAIMS AND DISPUTE RESOLUTION -** Any disagreement over this Agreement shall be resolved only through the following claim and dispute resolution procedure. SUBCONTRACTOR shall serve upon CONTRACTOR a written Notice of Claim within five (5) calendar days of the event giving rise to the disagreement Including SUBCONTRACTOR's receipt of a Direction to Proceed, a Change Order, backcharge, or unilateral Change Order ,ejection with which SUBCONTRACTOR disagrees. If the dispute cannot be resolved through good faith negotiations within a reasonable time after delivery of the written notice of dispute, the following dispute resolution provision shall apply:
>
> **1. <u>Limitation On ADR Procedures</u>: Disputes Involving the Owner -** The Dispute Resolution Provisions of the Prime Contract shall take precedence over the provisions or this Paragraph. If requested to do so by CONTRACTOR, SUBCONTRACTOR shall join in and be bound by any Dispute Resolution Proceeding between the CONTRACTOR and the OWNER, whether binding or non-binding including binding or non-binding arbitration. If CONTRACTOR is prohibited by the terms of the CONTRACTOR/OWNER Dispute Resolution Proceeding from joining SUBCONTRACTOR or if CONTRACTOR elects not to join SUBCONTRACTOR to such proceeding, then SUBCONTRACTOR shall fully cooperate with CONTRACTOR in presenting and defending Issues that relate to SUBCONTRACTOR'S work. . . .
>
> **Disputes Subject to ADR Procedures -** The following ADR procedures shall apply to disputes ("**Qualified Disputes**") between CONTRACTOR and SUBCONTRACTOR which (a) are not preempted by a CONTRACTOR/OWNER Dispute Resolution Proceeding, and (b) do not arise out of or relate to CONTRACTOR'S termination of SUBCONTRACTOR for default. The question or whether a dispute is a Qualified Dispute is within the absolute discretion of the CONTRACTOR and shall not be subject to review through these Dispute Resolution Procedures. . . .
>
> **2. <u>ADR Procedures</u>: Initiation of ADR Process -** Either party may initiate ADR Procedures for Qualified Disputes by delivery of written notice to the other party, ("Notice of Dispute") but only after full compliance with the Claim provisions of this Paragraph and after reasonable efforts to resolve the dispute through good faith negotiations.

> **Selection of Non-binding ADR Procedures -** Upon receipt or delivery of a Notice of Dispute, and after consultation with SUBCONTRACTOR, the CONTRACTOR shall determine what form(s) of nonbinding ADR services are most appropriate to the dispute(s) in question. CONTRACTOR may select any non-binding ADR procedure agreed to by SUBCONTRACTOR or failing agreement, CONTRACTOR may select from one or more of the ADR procedures available through such services as JAMS, including Mediation, Third Party Neutral(s), Special Master(s) and Independent Expert(s), and CONTRACTOR may require any of these as a condition precedent to litigation or arbitration. . . .
>
> **Initiating Binding ADR Proceedings - Arbitration -** If a Qualified Dispute is not resolved through non-binding ADR procedures within a reasonable period of time, CONTRACTOR, in its sole discretion, may require that the Dispute be submitted to binding arbitration through the office of JAMS closest to the project location, utilizing JAMS rules, provided that the total amount in dispute between the parties does not exceed $100,000. A reasonable period of time shall be no less than 60 days so long as the parties are cooperating in good faith in the scheduling of the non-binding ADR proceedings. Any Qualified Dispute that is not resolved through non-binding ADR procedures within a reasonable period of time, at CONTRACTOR's option and in its sole discretion may be resolved through a special reference pursuant to Section 638 of the Code of Civil Procedure, without a jury, with the referee authorized to hear and determine any or all of the issues, whether of fact or of law, and to report a statement of decision to the Superior Court, with judgment thereafter to be entered in accordance with applicable law. In the event that the Superior Court refuses to allow the reference or to enforce this provision authorizing a reference in CONTRACTOR'S discretion, the matter shall then be decided pursuant to binding arbitration in accordance with JAMS rules then in effect.

*Id.* (emphasis in original).

### C. Procedural Posture

Plaintiff initiated this action against Defendants Amoroso and Liberty Mutual Insurance Company on March 7, 2025. Compl. Plaintiff asserts three causes of action: (1) breach of contract against Defendant Amoroso for breach of the Subcontract; (2) violation of the Miller Act, 40 U.S.C. § 3133, against the Surety Defendants, for failure to perform their obligations under the payment bond and timely pay Plaintiff for work on the Project; and (3) quantum meruit against Defendant Amoroso for failure to pay Plaintiff the reasonable value of its labor, materials, and equipment furnished for the

Project. *Id.* ¶¶ 19-30, 31-39, 40-43. For relief, Plaintiff seeks damages in the amount of $3,688,063.87 with interest, attorney's fees, and costs. *Id.* at Prayer for Relief. On June 24, 2025, Plaintiff amended its Complaint to name Defendant Federal Insurance Company as one of the Surety Defendants in place of the fictitious "DOE 1" defendant. (ECF No. 6.)

On October 31, 2025, Defendants moved to compel Plaintiff's claims against Defendant Amoroso only to binding judicial reference under California Code of Civil Procedure section 638, and in the alternative, to compel Plaintiff's claims against Defendant Amoroso only to arbitration, pursuant to the Subcontract's ADR Provision. (ECF No. 9.) Plaintiff filed an opposition on November 14, 2025. Pl. Opp'n (ECF No. 19). Defendants filed a reply on November 24, 2025. Defs. Reply (ECF No. 20).

On December 16, 2026, the Court held a hearing on Defendants' motion to compel. (ECF No. 21.) At the hearing, the parties agreed to participate in mediation, and the Court and the parties discussed and agreed the Court would delay decision on Defendants' motion to compel until the conclusion of mediation, if a ruling was still needed. 12/16/2025 Minute Order (ECF No. 22). Mediation was completed on July 1, 2026 before mediator Eileen Diepenbrock, but the mediation failed to resolve the parties' dispute. (ECF No. 33.) On July 17, 2026, the parties filed a joint status report indicating that a decision on Defendants' pending motion to compel was still needed. (ECF No. 35.) Defendants' motion to compel is now submitted for resolution.

## II. LEGAL STANDARDS

### A. California Code of Civil Procedure Section 638

California Code of Civil Procedure section 638 provides that a court may appoint a judicial referee "to hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." Cal. Civ. Proc. Code § 638. The court may utilize this alternative dispute resolution procedure "upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that

any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties." *Id.* "The Supreme Court has established a strong policy in favor of enforcing the parties' agreements regarding where to hear their claims, a policy district courts have applied in enforcing agreements to permit cases to be heard by judicial referees." *Unicom Sys., Inc. v. Fed. Deposit Ins. Corp.*, 2024 WL 2425543, at *2 (C.D. Cal. May 14, 2024) (citing *Bagdasarian Prods., LLC, v. Twentieth Century Fox Film Corp.*, 2010 WL 5154136, at *4 (C.D. Cal. 2010)); *Performance Jet Skis LLC v. Bank of Am., N.A.*, 2025 WL 1135282, at *2 (C.D. Cal. Mar. 14, 2025), *aff'd*, No. 25-2438 (9th Cir. May 15, 2026); *see also E. & J. Gallo Winery v. Andina Licorices, S.A.*, 446 F.3d 984, 992 (9th Cir. 2006).

**B. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce." 9. U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*

To determine whether to enforce an arbitration agreement under the FAA, courts conduct a two-step analysis: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). If both elements are met, arbitration is mandatory. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 4. Further, the FAA requires that when an action is "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The party seeking to compel arbitration bears the burden of proving the

existence of a valid and enforceable agreement to arbitrate by a preponderance of evidence. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). In considering a motion to compel arbitration, the court "must give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Oberstein*, 60 F.4th at 517 (citation modified). As with a summary judgment standard under Federal Rule of Civil Procedure 56, "only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Montel v. North Sky Commc'ns, LLC*, 2026 WL 2030233, at *2 (E.D. Cal. July 14, 2026) (citation modified).

### C. Judicial Notice

Courts may consider undisputed facts contained in judicially noticeable documents under Federal Rule of Evidence 201. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This includes undisputed facts from documents attached to the complaint or those on which the complaint "necessarily relies." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (approving judicial notice of documents from judicial proceedings); *King v. Cal. Dep't of Water Res.*, 561 F. Supp. 3d 906, 910 (E.D. Cal. 2021) (taking judicial notice of administrative agency records, including decisional documents); *Gamboa v. Tr. Corps.*, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of recorded documents related to a foreclosure sale, including grant deed and deed of trust, as they were "part of the public record and [] easily verifiable").

## III. DISCUSSION

Defendants seek an order compelling Plaintiff to submit its claims against Defendant Amoroso to binding judicial reference under California Code of Civil Procedure section 638. (ECF No. 9); Defs. Mot. (ECF No. 10). Alternatively, Defendants seek an order compelling Plaintiff to submit its claims against Defendant Amoroso to binding JAMS arbitration. Defs. Mot. at 6-8. In either event, Defendants also seek a stay of the entire case, including Plaintiff's claims against the Surety Defendants, pending

the resolution of binding alternative dispute resolution. *Id.* at 8-10.

Plaintiff challenges Defendants' motion on several grounds. First, Plaintiff argues that its claims do not fall within the scope of the Subcontract's ADR Provision. Pl. Opp'n at 4-6. Second, Plaintiff argues that the ADR Provision's binding alternative dispute resolution procedures are not enforceable because the requisite non-binding alternative dispute resolution procedure has not been completed. *Id.* at 7. Third, Plaintiff argues the ADR Provision is substantively and procedurally unconscionable. *Id.* at 7-10. Fourth, Plaintiff argues enforcement of the ADR Provision and a stay of Plaintiff's claims against the Surety Defendants would violate the public policy of the Miller Act. *Id.* at 10-11. Plaintiff also challenges Defendants' alternative request to compel arbitration on the same grounds. *Id.* at 10.

Before proceeding to the merits of Defendants' motion, the Court addresses Plaintiff's request for judicial notice (ECF No. 19-5) and the parties' evidentiary objections (ECF Nos. 19-1, 19-2, 20-5). The Court considers next the threshold issue of unconscionability before turning to the parties' arguments on the scope of the ADR Provision.

**A. Plaintiff's Request for Judicial Notice**

Plaintiff requests that the Court take judicial notice of three exhibits from another case between Plaintiff and Defendant Amoroso, arguing these exhibits are relevant to show Defendant Amoroso treats the ADR Provision "as optional and discretionary, not as binding" where Defendant Amoroso failed to move to enforce the ADR Provision against Plaintiff in another lawsuit. Pl. Opp'n at 9; (ECF Nos. 19-5, 19-6, 19-7, 19-8). The Court denies Plaintiff's request for judicial notice as irrelevant. As stated in Defendants' objections to Plaintiff's request for judicial notice, Defendant Amoroso concedes that the ADR Provision is discretionary; therefore, whether Defendant Amoroso enforced the ADR Provision or a similar provision in a different project dispute in a different case between the parties does not affect the enforceability of the ADR Provision here. (*See* ECF No. 20-4 at 2.)

**B. Evidentiary Objections**

The parties also filed evidentiary objections to statements made in the opposing party's declarations. (ECF Nos. 19-1, 19-2, 20-5.) Because the Court's order does not rely on the evidence objected to by the parties, the parties' objections are overruled as moot. *See, e.g.*, *Wonderful Nurseries LLC v. Agric. Lab. Rels. Bd.*, 789 F. Supp. 3d 855, 867 n.6 (E.D. Cal. 2025); *Athari v. Charter Commc'ns, LLC*, 2024 WL 1162104, at *7 n.6 (S.D. Cal. Mar. 18, 2024).

**C. Unconscionability**

The Court next addresses the issue of unconscionability at the initial step. "The initial step in determining whether there is an enforceable ADR agreement . . . involves applying ordinary state law principles that govern the formation and interpretation of contracts in order to ascertain whether the parties have agreed to some alternative form of dispute resolution." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 787 (1998) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). At this step, Plaintiff argues that the ADR Provision is substantively unconscionable because Defendant Amoroso has unilateral discretion to define what constitutes a "Qualified Dispute" under the ADR Provision and to subject those disputes to binding alternative dispute resolution. Therefore, according to Plaintiff, Defendant Amoroso may unilaterally require the resolution of disputes under the ADR Provision rather than in litigation. Pl. Opp'n at 7-8. Plaintiff further argues the ADR Provision is procedurally unconscionable because the term "Qualified Dispute" is ambiguous and subject to Defendant Amoroso's discretion, and thus inherently unfair. *Id.* at 9.

Under California law, which applies here, "the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (citation modified). "The prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a

contract or clause under the doctrine of unconscionability." *Id.* (citation modified) (emphasis in original). "The party resisting [alternative dispute resolution] bears the burden of proving unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).

The Court first examines whether the ADR Provision is procedurally unconscionable.

1. <u>Procedural Unconscionability</u>

"Procedural unconscionability requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 55 Cal. 4th at 247 (citation modified). "There are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (citation modified). Accordingly, a procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). "A contract of adhesion is a standardized contract that is imposed and drafted by the party of superior bargaining strength and gives the subscribing party only the opportunity to adhere to the contract or reject it." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (citation modified); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013).

Where a party had the opportunity to review the agreement in advance and negotiate changes, courts are less likely to find that the agreement was procedurally unconscionable. For example, in *Great American Insurance Co. v. Weitz Co., LLC*, the district court found no procedural unconscionability in a subcontractor's agreement with a general contractor to perform work on a construction project. 2026 WL 346683, at *11 (N.D. Cal. Feb. 6, 2026). The subcontractor had negotiated to make modifications to the

subcontract, but the general contractor agreed only to revisions relating to the scope of work on the project. *Id.* at *1, 10. Although the court acknowledged that the subcontract was a standardized agreement drafted by the general contractor, who had superior bargaining power, the subcontractor had more than just "the opportunity to adhere to the Subcontract or reject it" because the subcontractor did propose changes, some of which were accepted. *Id.* at *11 (citation modified). The court concluded there was no evidence of procedural unconscionability because there was "no evidence suggesting that [Subcontractor] was pressured or manipulated into agreeing to the Subcontract. [General Contractor] solicitated bids, [Subcontractor] submitted a bid and was accepted, [General Contractor] sent [Subcontractor] a contract, and the parties negotiated the contract." *Id.* (citation omitted).

Here, the Court agrees with Defendants that the Subcontract was not a contract of adhesion and is not procedurally unconscionable. First, the executed version of the Subcontract indicates that the parties negotiated certain provisions where it contains modifications in red ink and both parties initialed the modifications. *See* Erskine Decl., Exh. A, at 2, 3, 4, 5, 6. Defendants also submit a declaration from James Benson, Chief Estimator at Amoroso, attesting that the parties negotiated the Subcontract over several months, from October 2019 to May 2020; that Plaintiff made over 90 requests for changes to the Subcontract; and that Plaintiff nonetheless failed to demand any revisions to the Subcontract's ADR Provision. Declaration of James Benson ¶¶ 4-12, Exhs. A, B, C (ECF No. 20-2).[2] Plaintiff does not submit evidence that it had no ability

---

[2] Defendants submitted the Benson Declaration and accompanying exhibits on reply. "While a court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief, evidence submitted in direct response to evidence raised in the opposition is not 'new.'" *Pineda v. Sun Valley Packing, L.P.*, 2022 WL 1625066, at *3 n.3 (E.D. Cal. May 23, 2022) (citation modified). Thus, the Court accepts the Benson Declaration as it responds to Plaintiff's arguments and evidence in opposition regarding unconscionability. The Court notes that although Plaintiff filed other evidentiary objections, Plaintiff has not objected to Defendants' Reply declarations despite having had ample opportunity to do so. (*See* Docket.)

or opportunity to negotiate the ADR Provision, or that it was prevented from negotiating the ADR Provision. Its assertions that it did not have “any meaningful negotiations concerning arbitration or dispute resolution” are insufficient. *See* Declaration of David Schmitt ¶ 6 (ECF No. 19-3). Plaintiff also does not dispute that it did in fact negotiate other provisions of the Subcontract with Defendant Amoroso. Accordingly, because Plaintiff had the opportunity to negotiate the Subcontract and did negotiate the Subcontract with Defendant Amoroso, the Subcontract, including the ADR Provision, was not procedurally unconscionable. See *Great Am. Ins.*, 2026 WL 346683, at *11; *Streedharan v. Stanley Indus. & Auto., LLC*, 2023 WL 9067587, at *2 (9th Cir. Jan. 4, 2023) (finding no procedural unconscionability where plaintiff “offers no evidence to show that he was ever *prevented* from negotiating”) (emphasis in original).

Although Plaintiff argues that the ADR Provision is procedurally unconscionable because the term “Qualified Dispute” is ambiguous and is subject to Defendant Amoroso’s “absolute discretion,” Pl. Opp’n at 9-10, this argument addresses substantive unconscionability, not procedural unconscionability. “Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement.” *Burris v. Discover Bank*, 2019 WL 9516076, at *5 (C.D. Cal. Sept. 20, 2019). Here, Plaintiff has not shown that the “Qualified Dispute” provision, assuming that it is ambiguous, indicates oppression or surprise where the provision clearly states that whether a dispute is a “Qualified Dispute” is subject to Defendant Amoroso’s “absolute discretion,” Erskine Decl., Exh. A at § G.1, and Plaintiff had an opportunity to negotiate the ADR Provision before accepting it. *Cf. Fifth Third Bank N.A. v. Judlau Contracting, Inc.*, 2022 WL 19239754, at *4 (C.D. Cal. July 24, 2022) (finding “procedurally unconscionable surprise” where arbitration provision contained vague, prolix language and “could easily have avoided surprise by expressly identifying the one-sided nature of the arbitration provision” but failed to do so).

/ / /

2. Substantive Unconscionability

As stated previously, "procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Sanchez*, 61 Cal. 4th at 910 (citation modified) (emphasis in original). "Absent any evidence of procedural unconscionability, [courts] need not reach the issue of substantive unconscionability." *Streedharan*, 2023 WL 9067587, at *3. Because there is no procedural unconscionability as explained above, the Subcontract and the ADR Provision are not unconscionable, and the Court need not reach the parties' arguments on substantive unconscionability. *See Great Am. Ins.*, 2026 WL 346683, at *12.

**D. Scope of the ADR Provision**

Because Plaintiff has not raised any other challenges to the enforceability of the ADR Provision, the Court must next determine whether Plaintiff's claims against Defendant Amoroso fall within the ADR Provision's scope. "A court interpreting an [alternative dispute resolution] clause applies state law principles of contract interpretation." *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1253 (N.D. Cal. 2019) (citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)), *aff'd*, 823 F. App'x 535 (9th Cir. 2020). "When the contract language is clear and explicit and does not lead to absurd results, the courts ascertain intent from the written terms and go no further." *Van De Hey v. EPAM Sys. Inc.*, 2025 WL 829604, at *5 (N.D. Cal. Feb. 28, 2025) (citation modified); *see also* Cal. Civ. Code § 1638.

Plaintiff argues that its claims are outside the scope of the ADR Provision for two reasons. First, Plaintiff contends the ADR Provision does not apply to claims involving the Project Owner. Pl. Opp'n at 4-5. Second, Plaintiff contends the ADR Provision does not apply where the amount in dispute exceeds $100,000 as it does here. *Id.* at 5-7.

/ / /

/ / /

/ / /

1. Claims Involving the Owner

The ADR Provision provides the following:

> **1. Limitation On ADR Procedures: Disputes Involving the Owner -** The Dispute Resolution Provisions of the Prime Contract shall take precedence over the provisions or this Paragraph. If requested to do so by CONTRACTOR, SUBCONTRACTOR shall join in and be bound by any Dispute Resolution Proceeding between the CONTRACTOR and the OWNER, whether binding or non-binding including binding or non-binding arbitration. If CONTRACTOR is prohibited by the terms of the CONTRACTOR/OWNER Dispute Resolution Proceeding from joining SUBCONTRACTOR or if CONTRACTOR elects not to join SUBCONTRACTOR to such proceeding, then SUBCONTRACTOR shall fully cooperate with CONTRACTOR in presenting and defending Issues that relate to SUBCONTRACTOR'S work. . . .
>
> **Disputes Subject to ADR Procedures -** The following ADR procedures shall apply to disputes ("**Qualified Disputes**") between CONTRACTOR and SUBCONTRACTOR which (a) are not preempted by a CONTRACTOR/OWNER Dispute Resolution Proceeding, and (b) do not arise out of or relate to CONTRACTOR'S termination of SUBCONTRACTOR for default. The question or whether a dispute is a Qualified Dispute is within the absolute discretion of the CONTRACTOR and shall not be subject to review through these Dispute Resolution Procedures.

Erskine Decl., Exh. A at § G.1.

Plaintiff contends (1) that it suffered damage due to delays caused by the Project Owner, (2) that Defendant Amoroso obtained compensation from the Project Owner (presumably for those delays), and (3) that Plaintiff was entitled to share in Defendant Amoroso's recovery pursuant to Section E of the Subcontract, which provides that "[Plaintiff's] RIGHTS SHALL EQUAL THOSE EXTENDED UNDER THE PRIME CONTRACT TO [Defendant Amoroso]" including for "additional compensation from [the Project Owner] on account of such delays." *Id.* at § E; Pl. Opp'n at 4-5. According to Plaintiff, this means Plaintiff's claims against Defendant Amoroso cannot be a "Qualified Dispute" under the ADR Provision because Section G.1 excludes disputes "involving the [Project] Owner." Pl. Opp'n at 5.

Plaintiff is incorrect. Section G.1 excludes from "Qualified Disputes" any dispute

between Defendant Amoroso and Plaintiff under the Subcontract to the extent it may be preempted by an ongoing dispute between Defendant Amoroso and the Project Owner under the Prime Contract. Erskine Decl., Exh. A at § G.1. This section does not exclude *all* disputes between Defendant Amoroso and Plaintiff where Plaintiff asserts that its harm was caused ultimately by the Project Owner. Even if Plaintiff is correct that Section E of the Subcontract provides Plaintiff a "pass-through" remedy to share in any recovery obtained by Defendant Amoroso from the Project Owner, a dispute between Plaintiff and Defendant Amoroso to validate Plaintiff's rights under Section E is not expressly excluded by the scope of "Qualified Disputes" under the ADR Provision. Further, there is no indication in the record that Defendant Amoroso is currently engaged in any overlapping disputes with the Project Owner.[3] Accordingly, Plaintiff has not established that a contractual exclusion under the ADR Provision applies. Plaintiff's claims against Defendant Amoroso constitute a "Qualified Dispute" and are subject to the ADR Provision.

2. <u>$100,000 Limitation</u>

The ADR Provision further provides under Section G.2:

> **Initiating Binding ADR Proceedings - Arbitration -** If a Qualified Dispute is not resolved through non-binding ADR procedures within a reasonable period of time, CONTRACTOR, in its sole discretion, may require that the Dispute be submitted to binding arbitration through the office of JAMS closest to the project location, utilizing JAMS rules, provided that the total amount in dispute between the parties does not exceed $100,000. A reasonable period of time shall be no less than 60 days so long as the parties are cooperating in good faith in the scheduling of the non-binding ADR proceedings. Any Qualified Dispute that is not resolved through non-binding ADR procedures within a reasonable period of time, at CONTRACTOR's option and in its sole discretion may be resolved through a special reference pursuant to Section 638 of the Code of Civil Procedure, without a jury, with the referee authorized to hear and determine any or all of the issues, whether of fact or of law, and to report a statement of decision to the Superior Court, with judgment thereafter to be entered in accordance with applicable law. . . .

---

[3] Section E of the Subcontract provides, "Nothing contained herein shall require [Defendant Amoroso] to make any claim against [Project Owner] for delays." *Id.* at § E.

Erskine Decl., Exh. A at § G.2.

Plaintiff argues that under this paragraph, its claims against Defendant Amoroso cannot be subject to binding alternative dispute resolution because binding alternative dispute resolution applies only to claims that do not exceed $100,000, and Plaintiff asserts damages of at least $3 million. Pl. Opp'n at 5-7. On reply, Defendants argue that this paragraph contains two alternatives for binding alternative dispute resolution. First, under the first sentence, Defendant Amoroso may require JAMS arbitration if the total amount in dispute is $100,000 or less. Defs. Reply at 6. Second, under the third sentence, "[a]ny Qualified Dispute that is not resolved through non-binding ADR procedures within a reasonable period of time" may be referred by Defendant Amoroso to a judicial referee, without regard to the amount in dispute. *Id.* at 6-7.

The Court concludes the ADR Provision's unambiguous language provides that "Qualified Disputes" may be referred to binding judicial reference as provided under Section G.2, paragraph 7, regardless of the amount in dispute. The first clause of the first sentence in this paragraph states that "[i]f a Qualified Dispute is not resolved through non-binding ADR procedures within a reasonable period of time, [Defendant Amoroso], in its sole discretion, may require that the Dispute be submitted to binding arbitration through the office of JAMS closest to the project location, utilizing JAMS rules, *provided that the total amount in dispute between the parties does not exceed $100,000*." Erskine Decl., Exh. A at § G.2 (emphasis added). The second clause at issue, in the third sentence of the paragraph, contains almost identical conditional language but conspicuously omits the $100,000 limitation present in the first clause: "Any Qualified Dispute that is not resolved through non-binding ADR procedures within a reasonable period of time, at [Defendant Amoroso]'s option and in its sole discretion may be resolved through a special reference pursuant to Section 638 of the Code of Civil Procedure . . . ." *Id.*

"This language, while broad, is not ambiguous. . . . Had the parties not intended to include [claims over $100,000] within the ambit of the second clause, they clearly

knew how to express that intention, as evidenced by the express limitation in the first clause." *Martell Cogeneration Ltd. P'ship v. Georgia-Pac. Corp.*, 1993 WL 121783, at *3 (N.D. Cal. Apr. 6, 1993). Further, the second clause reaches "*[a]ny* Qualified Dispute that is not resolved through non-binding ADR procedures within a reasonable period of time." Erskine Decl., Exh. A at § G.2 (emphasis added). "It is . . . impossible to construe the term 'any' to mean anything but 'one or some indiscriminately of whatever kind.'" *Barcellos & Wolfsen, Inc. v. Westlands Water Dist.*, 849 F. Supp. 717, 723 (E.D. Cal. 1993) (quoting Webster's New Collegiate Dictionary (5th ed. 1977)).

Thus, based on the clear and unambiguous language of the ADR Provision, Defendant Amoroso may refer Plaintiff's claims to judicial reference, notwithstanding that the amount in dispute exceeds $100,000. *See Martell*, 1993 WL 121783, at *3 (holding that parties' contract permitted most claims for negligence but barred plaintiff's particular claim for damages where contract clause barred that type of claim and did not contain express limitation for negligence-based claims).

**E. Preconditions to ADR Provision**

Plaintiff's opposition contends that the ADR Provision's prerequisites for judicial reference have not been met because the parties have not participated in non-binding alternative dispute resolution such as mediation. Pl. Opp'n at 7; *see* Erskine Decl., Exh. A at § G.2. Since the filing of Plaintiff's opposition, the parties have participated in mediation and the Court concludes Plaintiff's argument is moot. (*See* ECF Nos. 33, 34.)

**F. Summary**

In summary, the Court concludes that the ADR Provision in the Subcontract is enforceable as to Plaintiff's claims against Defendant Amoroso. Accordingly, the Court grants Defendants' motion to compel judicial reference and proceeds to address whether to stay this action.

**G. Stay Pending Judicial Reference**

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of

independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Here, because the Court grants Defendants' motion compel judicial reference, a stay of this action is appropriate. Specifically, permitting both this action and the judicial reference proceeding to occur simultaneously "would needlessly duplicate the proceedings and could potentially produce inconsistent results" because Plaintiff's claims against both Defendant Amoroso and the Surety Defendants are predicated on whether Defendant Amoroso breached the Subcontract. *See Eagle Rock Timber, Inc. v. Liberty Mut. Ins. Co.*, 2022 WL 1689304, at *4 (D. Idaho May 25, 2022).

Plaintiff objects to a stay as contravening the Miller Act's public policy by requiring Plaintiff's Miller Act claims against the Surety Defendants be stayed while its claims against Defendant Amoroso are pending before a judicial referee. Pl. Opp'n at 10-11. For support, Plaintiff relies on *United States ex rel. Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199 (9th Cir. 2002), which states that "[w]here subcontract terms [a]ffect the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *Id.* at 1207.

"The Miller Act requires a general contractor on a federal construction project to furnish a payment bond 'for the protection of all persons supplying labor and material in the prosecution of work provided for in [the] contract.'" *Id.* at 1205 (quoting 40 U.S.C. § 270a(a)(2)). "The purpose of the payment bond required under the Miller Act is to shift the ultimate risk of nonpayment from workmen and suppliers to the surety." *Apple Valley Commc'ns, Inc. v. Budget Elec. Contractors, Inc.*, 2020 WL 8385651, at *4 (C.D. Cal. Dec. 8, 2020) (citation modified). "While it is possible for a supplier to waive his rights under the Act, the federal courts have been uniform in their insistence that a waiver be clear and explicit." *United States ex rel. Youngstown Welding & Eng'g Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1166 (9th Cir. 1986) (citation modified).

Here, a stay would not constitute an implied waiver of Plaintiff's Miller Act claims

against the Surety Defendants. *United States ex rel. Walton* is inapposite as it invalidated an implied waiver of a subcontractor's Miller Act claims where the subcontract conditioned the Miller Act claims on "when and if" the prime contractor was paid by the government. 290 F.3d at 1208. In contrast, this case is more analogous to those where courts have authorized a stay of Miller Act claims pending arbitration between the subcontractor and the prime contractor. *See Lee & Rua Co. v. Great Am. Ins. Co.*, 2008 WL 1868633, at *2 (W.D. Wash. Apr. 23, 2008) (compelling arbitration and staying Miller Act claims against surety); *Eagle Rock*, 2022 WL 1689304, at *4 (collecting cases staying Miller Act bond claims pending arbitration).

The Court further agrees with Defendants that Plaintiff would not be prejudiced by a stay of Plaintiff's Miller Act claims against the Surety Defendants because Plaintiff would only need to pursue its Miller Act claims against the Surety Defendants if it prevailed in arbitration and Defendant Amoroso were unable or unwilling to satisfy judgment. *See* Defs. Mot. at 10. This process appears to facilitate rather than hinder efficiency because "a judgment against a principal conclusively establishes against a surety the fact of and the amount of the principal's liability as long as the surety has notice of the proceeding against the principal." *U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1153 (9th Cir. 1987).

### H. Motion to Compel Arbitration

Because the Court grants Defendants' request to refer the matter to a judicial referee pursuant to California Code of Civil Procedure section 638, the Court does not reach the parties' arguments on Defendants' alternative request to compel arbitration.

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel judicial reference (ECF No. 9) is GRANTED;
2. Defendant Amoroso shall promptly file a demand for reference to a referee according to the procedures set forth in the ADR Provision and

under California law, *see* Cal. Civ. Proc. Code §§ 638 *et seq.*;

3. This action is STAYED in its entirety pending completion of the reference proceedings; and

4. The parties are directed to file a Status Report with this Court every three months concerning the progress of the reference proceedings.

Dated: September 8, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, dmsd.0780.25